STATE, Plaintiff, v. E. W. SCRIPPS CO., Defendant.

Common Pleas Court, Cuyahoga County.

No. 72123. Decided April 20, 1960.

*Mr. John T. Corrigan,* prosecuting attorney, *Messrs. Sheldon C. Clark* and *Edward C. Stanton* (of the Cleveland Bar Association), and *Messrs. A. L. Kearns* and *Franklin A. Polk* (of the Cuyahoga County Bar Association), for the state.

*Messrs. Raymond T. Jackson* and *Ezra K. Bryan,* for the respondent.

For further history see *Omnibus Index* in bound volume.

WHITE, J.  In this special proceeding, a committee of attorneys headed by the Prosecuting Attorney of Cuyahoga County, duly filed an information in contempt against the corporate respondent growing out of an article published in the Cleveland Press on July 23, 1959, wherein it is stated that the Grand Jury then sitting "had voted to return an indictment" against one Nicholas J. Popovic and one Bert R. Winston.  Respondent filed its motion to quash or dismiss the charges in contempt or, alternately, to make the charges definite and certain.  Said motion was overruled as to each of its branches by the Honorable Samuel H. Silbert, Chief Justice, following a full hearing on the same.  Thereupon the Chief Justice assigned the case to the Presiding Judge of the Criminal Branch for the January 1960 term of court for trial or hearing on the merits.

The cause duly came on for hearing or trial on the merits in Room One, Criminal Court, and was heard on the information, the evidence and statements and briefs of counsel.

The controlling facts are not in serious dispute.  The State's case was presented entirely by stipulation of certain facts from which it appears substantially as follows:—

Respondent is an Ohio corporation and is the publisher of the Cleveland Press, a newspaper of general circulation throughout Cuyahoga County with a daily circulation in excess

of 300,000.  On July 23, 1959, there was published on the front pages of the Home Edition and the Final Edition of the Cleveland Press and circulated a certain article with bold headlines reporting that the Grand Jury had "voted" an indictment against Messrs. Popovic and Winston.  Those editions go into circulation about 2 P. M., and 4 P. M., respectively each week day.  The Grand Jury had been empaneled and sworn on March 30, 1959, by the Honorable William K. Thomas, then presiding. After being duly sworn the grand jurors were duly charged as to their duty by the presiding Judge who called their attention particularly to the obligation of secrecy imposed by their oaths.  During the month of July the Grand Jury was in session on the following days only: 2, 7, 8, 9, 23 and 24.  Prior to July 23 a joint indictment against Messrs. Popovic and Winston had been "voted" but had not been returned, filed or docketed. Between 9 and 10 A. M., on the morning following the publication, to-wit, July 24, said indictment was presented by the foreman to the presiding Judge, filed with the Clerk of Court and docketed as No. 71,643.

Each of the indicted persons voluntarily appeared before the Court on the same day the indictment was returned and gave bond without a pick-up order for their being taken into custody having been issued.  On August 5, 1959, the presiding Judge further charged the Grand Jury as to its obligation of secrecy with special reference to the reported voting of the indictment in question before its return.  On August 27, 1959, the Grand Jury made its report wherein it stated that its members had faithfully kept the obligation of secrecy imposed by their oaths, whereupon they were discharged.

It is conceded by both parties that information respecting the voting of the indictment prior to its return had not been given out by any member of said Grand Jury.

The editor and city editor of the Cleveland Press appeared as witnesses for the respondent and testified as to how and why the fact that the indictment had been "voted" was prematurely published.  Apart from the fact that they claimed knowledge as early as July 20 that an indictment had been voted some three days in advance of publication, no useful purpose can be served by detailing their testimony here.  Like-

wise, numerous exhibits offered and received on both sides of the case need not be detailed.

Section 2939.18, Revised Code, provides as follows:

"No grand juror, officer of the Court, or other person shall disclose that an indictment has been found against a person not in custody or under bail, before such indictment is filed and the case docketed, except by the issue of process."

This section appears in Title XXIX relating to Crimes (and) Procedure and is a part of Chapter 2939 thereof pertaining to Grand Juries. It is not attended with any penalty clause although it was originally enacted many years ago. The State contends that respondent, being a person other than a grand juror or officer of the court, violated the provisions of said section by disclosing that an indictment had been found against Popovic and Winston who were not in custody or under bail and before such indictment had been filed or the case docketed. Respondent contends first that it is not amenable to said statute by reason of the fact that it is not a person within such meaning. The respondent's contention is not well taken. It is held that a corporation is a person within the meaning of Section 2939.18, Revised Code. By merely so holding, however, the more substantive issue, namely, whether the publication contrary to statute is a contempt of court, is not disposed of.

The State contends that the publication complained of, having been made in violation of Section 2939.18, Revised Code, is a direct, as opposed to an indirect, contempt of Court as defined in Section 2705.01, Revised Code. With this contention we cannot agree. The publication (or disclosure) in this instance was made neither in the presence of the Court or judge nor so near thereto as to be an act warranting summary action by the court. Judge Thomas expressed the same view when he said in writing prior to the filing of the information herein that the act constituting a contempt, if any, was not done in his presence or in the proximity of the court.

We are thus confronted with the crucial question in this case, namely, whether the premature publication complained of constitutes an indirect or constructive contempt of court. The State contends that it is because (1) it is a direct contravention of Section 2939.18, Revised Code, supra: (2) it is proscribed

by Section 2705.02, Revised Code, as being in disobedience of a lawful order or command of the Court respecting secrecy as embodied in Judge Thomas' charge to the Grand Jury, whereby said "order and command" was (a) made "impotent and ineffective" and "tended to and did obstruct the due administration of justice" in this instance. The respondent contends that the publication in question does not offend Section 2939.18, Revised Code, for the forbidden "disclosure" was not made by itself but by the person or persons (within the Court's own family other than a grand juror) who gave the information to its reporter; that if its act of publication offended Section 2939.18, Revised Code, the statute carries no penalty as an offense and is not punishable as a contempt of court in any event; that there was no order or command of the court addressed to or embracing itself thus rendering Section 2705.02, Revised Code, inapplicable in this instance; and that there was no actual obstruction to the administration or interference therewith shown in this case.

The foregoing opposing contentions go to the very heart of this case. The record is barren of any evidence that the publication in question actually resulted in any interference with the due administration of justice or afforded any actual obstruction thereto. The most that can be said to the contrary is that the premature publication of the fact that an indictment has been found, in the light of the non-penal proscription set forth in Section 2939.18, Revised Code, tends to bring the administration of justice into more or less disrepute as a concept governed and controlled by rules of law. The latest pronouncements of the United States Supreme Court, cited in respondent's brief, seem to require more than a speculative tendency by the publication to cause mischief as a basis for punishment for contempt in the face of familiar federal constitutional guaranties. It is questionable whether on the record in this case the publication even had a tendency to create any interference with or obstruction of the due administration of justice.

The evidence requires a finding that there was no order or command of the court which can support the claim that the publication in question was in disobedience of. The argument that the charge of the Court to the Grand Jury constitutes

such an order or command to any persons other than the grand jurors is not supported by any authority cited or known of. The argument falls of its own weight, for the charge to the Grand Jury is not given the status of an order or command to every person by any statute. Insofar as the charge to the Grand Jury constituted an order or command to the members thereof—and we believe it did—there is no evidence that it was rendered either "impotent" or "Ineffective" by the publication in question. In fact, the evidence to the effect that the grand jurors faithfully abided by the obligation of their oaths throughout their term refutes the claim that the publication had any such deleterious effect as to the grand jurors.

The State seems to have assumed throughout this case that the publication complained of constituted a disclosure within the meaning of the statute forbidding such disclosure. The question is not argued in its brief. Entertaining as it does the views hereinabove set forth, it is not necessary for the Court to determine in this case whether the respondent disclosed the fact published or whether it merely published a disclosure previously made to it by another and given a wider circulation by it. Quaere, whether the spread and circulation of an original disclosure by another is still a disclosure enjoined by Section 2939.18, Revised Code.

The views stated in this memorandum of opinion are not to be taken as a condonation of the act complained of. The lawful prerogatives of the press of our country are numerous and zealously guarded at every turn. They can be subject to abuse with protection. It would seem that the press would be constantly on the alert to the responsibilities that go with its protected rights. On principle, it would seem further that a legislative directive not to do a certain thing would command the respect of the press, and, therefore, scrupulously attended with compliance even though no penalty is in terms a part of the directive. Seen through such strictly technical optics, the statutory injunction may be nothing more than a declaration of policy requiring simple emendation to be made completely effective. The explanations given for the premature publication that an indictment had been "voted" in the instant case do not impress the writer as a proper or controlling motivation for the act com-

mitted. In the course of the trial, it was attempted to be shown that on numerous occasions prior to July 1959, all three daily papers of that time had demonstrated their disdain for the legislative declaration of policy by prematurely publishing the voting of indictments before their return. If true, this only establishes a precedent for disregarding the law whenever a publisher deems it imperative enough to do so.

It follows from the views and findings hereinbefore stated that the act complained of, being bereft of any of the deleterious circumstances anticipated and frowned upon by the law, does not constitute contempt of court. Accordingly, the respondent is found not guilty and the information is dismissed at the State's costs.